## John B. D. Voisin *v.* Aimé Guillet.

The act of 12th March, 1838, creating the office of Collector of State taxes on land-ed property, slaves, and vehicles for the parish of Orleans, contemplates and pro-vides that a collector of State taxes for that parish shall be appointed every year, for the special purpose of collecting the taxes due on the assessment roll, made for and during the year of his appointment, without any reference to the collection of the balance of the taxes remaining due for the preceding year. The bond required relates exclusively to the assessment made during the year of the appointment. And under the act of 28th February, 1840, amending that of 12th March, 1838, though another person may have been appointed collector for the next year, the collector of the preceding year is authorized, and bound to retain the assessment roll and receipts for taxes uncollected at the end of his year, and to proceed with the collection of such taxes until, according to the terms of his contract with the State, he shall have collected and accounted for all the State taxes for the year for which he was appointed. The appointment of a new collector does not destroy the commission of his predecessor.

Appeal from the District Court of the First District, *Buchanan*, J.

Simon, J. We are called upon to decide, whether the collector of State taxes on real estate for the parish of Orleans, appointed on the first Monday of February, 1843, can be authorized to demand of his predecessor the assessment roll of 1842, and other papers belonging to his office, for the purpose of collecting the taxes due thereon ; or in other words, the question here presented is, by whom are the State taxes for the year 1842, to be collected.

The defendant, who was the former incumbent, contends, that the appointment of the plaintiff, as collector, has only superseded the duties imposed upon his predecessor for all taxes to be collected on the tax roll belonging to the year 1843 ; but that it can in no manner impair, or curtail, any of the vested rights of his predecessor as collector of taxes on the roll of 1842.

He further insists that he, as well as the plaintiff, was appointed under the law approved on the 12th of March, 1838, by which he is empowered to collect all taxes due on the roll which was to be delivered to him on the first day of August after his last appointment, which was on the first Monday of February, 1842 ; that he

has given his bond for the collection of said taxes, and that he cannot be deprived of the benefit of their collection, after having assumed the duties, charges, and responsibility, imposed upon him by law, as collector.

He also maintains, that he is not only borne out in his interpretation of the extent of his legal rights and duties by invariable practice and custom, established at the Treasury Department of the State, but also by express legislation made on similar matters.

Our learned brother of the District Court has disregarded and rejected the respective pretensions of both parties, and ordered that a peremptory *mandamus* should issue, commanding the defendant to deliver over to the State Treasurer, all the receipts for taxes of the year 1842, not collected by him, in order that said Treasurer may make such disposition of them as is provided by the law, under which the contending parties were appointed. From this judgment, the defendant has appealed.

The facts agreed upon by the parties, and shown by the record, are these. They were both regularly commissioned, the defendant on the first Monday of February, 1842, and the plaintiff on the 10th of February, 1843. The defendant's bond is dated the 15th of December, 1842, for the sum of $65,831 ; and recites, that " whereas Aimé Guillet has been appointed collector of the taxes on landed property and slaves, in and for the parish of Orleans, if he shall faithfully collect, and account for all taxes of the State within the parish of Orleans *for the year* 1842, according to law, &c." This bond was regularly approved, according to the second section of the act of 1838.

The testimony of François Gardère, former Treasurer of the State, establishes, that the assessment roll for the collection of State taxes is handed to the collector on the first day of August of each year, according to law ; and as soon as the amount of taxes resulting therefrom is ascertained, the bond is required from the collector for that amount ; but that owing to delay on the part of the assessors, that amount cannot sometimes be ascertained, until after the delivery of the assessment roll : and that such was the case for last year ; in consequence whereof, the bond bears the date which it has. The Treasurer also states, that " the invariable practice at the Treasury Department, whenever any collector of

taxes has been superseded in office, has been to leave with him the assessment roll upon which he had given his bond, and to let him collect the taxes due thereon." .

The record contains also a certificate of the State Treasurer showing that the collector entered into bond for the collection of the taxes for the year 1837, on the 14th of March, 1838 ; for the collection of the taxes of 1838, on the 9th of January, 1839 ; for the year 1839, on the 1st of December, 1839 ; for the year 1840, on the 1st of December, 1840 ; and for the year 1841, on the 2d of December, 1841.

It has also been stated in the arguments, and not denied, that the plaintiff has furnished his bond as collector, for the amount of the assessment roll of the year 1842 ; so that there appear to exist two bonds in favor of the State, both for the same amount, for the collection of last year's taxes. The last bond, however, has not been produced, and nothing shows that it ever was approved according to law.

The office of collector of State taxes on landed property, slaves, and vehicles, in and for the parish of Orleans, was created by an act of the Legislature, approved on the 12th of March, 1838, (Laws of 1838, p. 96,) the first section of which provides that, "immediately after the passage of this act, and on the first Monday of February, of *every year hereafter*, there shall be appointed by the Governor, by and with the advice and consent of the Senate, a collector of State taxes, &c., whose duty it shall be to proceed to the collection of said taxes, due for the year 1837, and for every succeeding year, in the manner prescribed by law."

The second section of the act makes it the duty of the Treasurer, to deliver over to the collector the assessment roll for the year 1837 ; "and *for every year thereafter the Treasurer shall deliver the said roll to the collector on the first day of the month of August*," before which delivery, the collector shall give his bond, &c., to be approved by the Parish Judge of the parish of Orleans, and the Treasurer of the State.

The third section provides for the duties of the collector, and requires him to pay into the Treasury, at the end of every month, the amount by him collected ; and to make a final settlement of his account with the Treasury on the last Monday of December of

every year; and then to deliver over to the Treasurer all the re-
ceipts for taxes not collected; it being the duty of the Treasurer,
" to deliver said receipts to the Sheriff of the parish of Orleans,
to be by him collected and accounted for according to law."

It seems to us, that it clearly results from the provisions of this
law that the intention of the Legislature was, that a collector of
State taxes should be appointed every year, for the special purpose
of collecting the taxes due on the assessment roll made for, and
during the year of his appointment, without any reference to the
collection of the balance of the taxes remaining due for the pre-
ceding year.    The bond which the collector gives before receiving
the assessment roll, to be delivered to him on the first day of Au-
gust, relates exclusively to the said assessment, and to no other;
and the Treasurer is authorized to deliver to him the said roll,
(except as to the year 1837,) *for every year thereafter*, that is to
say, for every year immediately following his appointment.    This
interpretation appears to be strengthened by the circumstance, that
the act having been passed in March, 1838, it was necessary to
provide for the collection of the taxes of 1837; and this was ac-
cordingly provided for by the terms of the second section, which
makes it the duty of the Treasurer not only to deliver to the col-
lector, to be appointed, the assessment roll which should be ready
on the first day of August ensuing, but also that of 1837.    This
shows, it is true, that the collector first appointed under said act,
had the collection of two assessment rolls, but that *for every year
thereafter*, only one roll should be delivered to the collector pre-
viously appointed.    Thus, the collector appointed in February,
1838, was to be put in possession of the assessment roll of 1837,
and also that of 1838, to be delivered to him on the first day of
August following; and the collector appointed in February, 1839,
was to collect the taxes of that year on the assessment roll put in
his hands on the 1st of August ensuing, and so on.

With this view of the intention of the law-maker, how can the
plaintiff pretend that, under the law of 1838, he is authorized to
look behind the time of his appointment, and to claim the collec-
tion of the taxes of 1842?    The tax roll of that year had been
delivered to his predecessor, and the only assessment roll which,
under said law, he is entitled to receive, is the one which the State

Treasurer is directed to deliver into his hands on the 1st of August next. Again; the law does not contemplate that he should have any other; as, in establishing a general rule to be followed *thereafter*, the collection of the taxes of 1837 appears to be provided for as an exception required by actual and existing circumstances.

This necessarily brings us to the question, whether the defendant, whose time, as collector, is said to have expired by the appointment of his successor, can continue to execute the duties of his office? We have already expressed our opinion, that the plaintiff cannot be allowed to take the collection of the taxes due for the year 1842, and it is necessary that those taxes should be collected by somebody. By the terms of the defendant's bond, dated the 15th of December, 1842, he contracted the obligation of collecting and accounting for the taxes of the year 1842, and under the third section of the law of 1838, he was to make *a final settlement* of his account with the Treasury, on the last Monday of December last. It is clear that the taxes were not then collected, and that if he had any account to settle, it was for a very small amount. As it is explained by the testimony of the Treasurer, it was not the defendant's fault, and we cannot see any reason why he should suffer from a circumstance over which he had no control. Such circumstances were not foreseen, or provided for, by the law of 1838; under the provisions of which, it seems, that after the final settlement of accounts between the Treasurer and collector, the latter should remit all the receipts for taxes not collected, to be delivered by the State Treasurer to the Sheriff for collection. Thus, the collector had, under the law of 1838, nothing further to do with the collection of taxes, after his general settlement of accounts.

But, by a law approved on the 28th of February, 1840, (Bullard and Curry's Digest, 734, No. 151,) it is enacted that, " the collector of State taxes on landed property, slaves, and vehicles in and for the parish of Orleans, shall enjoy as such, all the powers now vested by law in the several sheriffs of the state, as collectors of taxes." The clear object of this law is to give to the collector, the right and power of enforcing the collection of the taxes in the same manner as the sheriffs of the State are authorized to do. They may act as sheriffs in the collection of taxes,

and this does away with the necessity of delivering to the Sheriff of the parish of Orleans the receipts for unpaid taxes, to be *by him* collected and accounted for according to law.    The act of 1840 repeals and destroys the latter clause of the third section of the law of 1838, in such manner, that, after having settled his account with the State Treasurer, the collector is obviously authorized to keep the receipts for uncollected taxes, and to coerce their payment or collection in the same way as the several sheriffs are empowered to do, as collectors of taxes.    It follows, therefore, that after the last Monday of December, the collector is necessarily authorized to continue to keep the assessment roll, and the receipts for uncollected taxes, in his possession ; and that he is bound to proceed to the collection thereof, not until he is superseded in his office by the appointment of a successor, who, as we have already said, is only appointed to collect the taxes of the ensuing year, but until, according to the terms of his contract with the State, he shall have *collected, and accounted for all the taxes of the State for the year for which he has been appointed :* and for that purpose, from the moment that he has settled his general account with the State Treasurer, and even before, if necessary, he is to fulfil the same duties, and is vested with the same powers as are conferred upon the several sheriffs of the state, as collectors of taxes.

It has been insisted, however, that the appointment of a new collector, destroys the commission of his predecessor, and that the time of office of the former incumbent thereby necessarily expires.    This, in our opinion, is a *non sequitur.*    Again ; the new collector is only appointed for the ensuing year, and has nothing to do with the collection of the preceding taxes.    We are not ready to say, that the appointment of a collector for the year 1843, supersedes the collector appointed for the year 1842, so absolutely as to prevent him from acting under his former commission in the collection of the taxes remaining unpaid.    The law has made them distinct, and we are unable to see any reason why they should not act consistently, each in his separate sphere and capacity, under different and distinct contracts and obligations.    It has been said, that the State cannot have several collectors in office, acting at the same time ; that this would cause a confusion of

powers and duties. This would be true, if they were fulfilling the same duties, and acting for the same object, or employed for the same purpose. But it appears to us, that two officers, appointed for distinct and different purposes, under separate contracts or obligations, and who, in the exercise of their duties, have not to interfere with each other's rights and powers, may act at the same time, and in the same place, for the benefit, and under the authority of the same employer. Nay, this would rather enhance the security of the State, as the taxes of two years would not be in the same hands ; and, far from creating any confusion, the collectors' accounts being kept distinct and separate, would obviously, be more correctly and more easily rendered to the State Treasurer.

In support of the position which we have adopted, we have been referred to a law of 1815, (Bullard and Curry's Digest, 716, No. 55,) which provides that, "in cases of resignation or suspension in office, all collectors of taxes shall be authorized to proceed with the collection of such taxes as remain unpaid, in the same manner, and under the same responsibility as are, by law, provided in relation to collectors of taxes ;" and the second section of which, *in case of absence of the collectors, or of their failure to pay the taxes, gives the same right and power to their securities, who are authorized to take into their possession, the list of taxes remaining unpaid*, &c. This law, though, perhaps not directly applicable to the question at issue, shows conclusively that the intention of the Legislature has always been, that collectors of taxes should not be interrupted in the legal exercise of their duties, and in the faithful compliance with their contracts ; and that they should execute their obligations *throughout*. Thus, the law makes it their duty, and authorizes them to collect the unpaid taxes, even when they have resigned or are suspended, and this confirms us in the opinion that the object of the law-maker is, that the collection of State taxes should not be divided between two collectors successively appointed, and that the State only looks to the first incumbent, and to no other, for the payment into the Treasury of this branch of its revenue. This is in concordance with the invariable practice adopted by the former Treasurer of the State, and we feel no hesitation in saying that it is, *in our opinion*,

a correct interpretation of the several statutes which govern the matter under consideration.

In conclusion, we must declare, that the appointment of the plaintiff as collector of taxes, being only prospective in its operation, does not entitle him to the collection of the taxes of the preceding year; that it only applies to the collection of the taxes of the year 1843, under the assessment roll to be delivered to him on the first day of August next; and that the judge *a quo* did not err in disregarding his pretensions : and we must also say, that the defendant has not been superseded in office, by the said appointment, as to the collection of the taxes remaining unpaid for the year 1842 ; that the defendant ought to be maintained in the exercise of his powers and duties, as such collector, until the taxes of 1842 shall have been finally collected and accounted for in due course of law; and that, in our opinion, the inferior judge erred in commanding him to deliver over to the State Treasurer all the receipts for taxes of the year 1842, yet uncollected.

It is therefore ordered, that the judgment of the District Court be reversed ; that ours be for the defendant ; and that the rule obtained below be discharged, with costs in both courts.

*Preston*, Attorney General, for the plaintiff.

*Soulé*, for the appellant.